[L. A. No. 3842. Department One.—April 19, 1917.]

E. E. REMSBERG, Respondent, v. HACKNEY MANU-FACTURING CO. (a Corporation), Appellant.

PLEADING—JURISDICTION OF PERSON—GENERAL APPEARANCE—WAIVER OF DEFECTIVE SERVICE.—A defendant by answering and going to trial on the merits makes a general appearance and submits himself to the jurisdiction of the court, although he first appeared specially and moved to set aside the service of the summons on the ground that the service was defective.

CONTRACT OF PURCHASE—ACCEPTANCE OF OFFER.—A written offer to purchase personal property, signed by the buyer alone, becomes binding upon both parties when accepted and acted upon by the seller.

ID.—RESCISSION OF CONTRACT—EVIDENCE—PRIOR ORAL NEGOTIATIONS INADMISSIBLE.—In an action to enforce rescission of a written contract to purchase personal property, prior oral representations are inadmissible where the contract is complete upon its face and no

claim made that such representations had been fraudulently made to induce its execution.

ID.—PLEADING—ADMISSIONS IN ORIGINAL ANSWER—AMENDED ANSWER— PROOF OF PRIOR NEGOTIATIONS INADMISSIBLE.—In such an action it is unimportant that the making of some of the prior oral negotiations were admitted by the original answer, where by the amended answer the defendant asserted its purpose of standing upon the written contract to the exclusion of any prior representations.

ID.—PURCHASE OF PLOW—FITNESS FOR PARTICULAR PURPOSE—CODE SECTION INAPPLICABLE.—The provision of section 1770 of the Civil Code that one who manufactures an article for a particular purpose warrants by the sale that it is reasonably fit for that purpose is not applicable to a plow purchased by description, and not manufactured under an order for a particular purpose.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John M. York, Judge.

The facts are stated in the opinion of the court.

Collier & Clark, and James E. Shelton, for Appellant.

E. E. Keech, for Respondent.

SLOSS, J.—Plaintiff is the owner of 160 acres of farm land in Los Angeles County. The defendant is a corporation organized under the laws of Minnesota, and engaged in the manufacture and sale of the "Hackney Auto Plow," a gas-engine tractor advertised and sold for the purpose and use of plowing, hauling, and operating farm machinery. In 1912 the parties entered into a contract for the purchase by plaintiff of one of these implements. The auto plow was shipped to plaintiff who paid the full purchase price. Finding that the machine did not give the service which, as he contended, he had a right to demand, he undertook to rescind the contract, and brought this action to enforce the rescission. He was given judgment for the purchase price paid by him, with interest. The defendant appeals.

Before answering to the merits the defendant appeared specially and moved to set aside the service of summons, on the ground that there had not been such service as is required by the Code of Civil Procedure. (Sec. 411, subd. 2.) The motion was denied. We need not inquire whether the attempted service was in fact defective. By answering and

going to trial on the merits, the defendant made a general appearance and submitted itself to the jurisdiction of the court. It thereby waived any right it may have had to insist that jurisdiction of its person had not been obtained. Although some of the earlier decisions in this state declare that a defendant who has appeared for the sole purpose of questioning the service of process upon him, and whose motion in this behalf has been denied, does not, by subsequently answering to the merits, lose his right to stand upon his objection to the jurisdiction (*Deidesheimer* v. *Brown,* 8 Cal. 339; *Lyman* v. *Milton,* 44 Cal. 630; *Kent* v. *West,* 50 Cal. 185), the contrary rule has been firmly established by a number of more recent cases. "If a defendant wishes to insist upon the objection that he is not in court for want of jurisdiction over his person, he must specially appear for that purpose only, and must keep out for all purposes except to make that objection." (*Olcese* v. *Justice's Court,* 156 Cal. 82, 87, [103 Pac. 317].) In *In re Clarke,* 125 Cal. 388, [58 Pac. 22], the court, speaking through Temple, J., refers to *Deidesheimer* v. *Brown* and *Lyman* v. *Milton, supra,* and, in effect, overrules these cases. It is argued by appellant that the point was not necessarily involved in the Clarke case. The declaration of Mr. Justice Temple has, however, received our approval in several cases (*Security etc. Co.* v. *Boston etc. Co.,* 126 Cal. 418, [58 Pac. 941, 59 Pac. 296]; *In re Yoell,* 131 Cal. 581, [63 Pac. 913]; *Olcese* v. *Justice's Court,* 156 Cal. 88, [103 Pac. 317]), and is in harmony with other rulings of this court, both before and since the decision of *In re Clarke.* (*Desmond* v. *Superior Court,* 59 Cal. 274; *Sears* v. *Starbird,* 78 Cal. 225, [20 Pac. 547]; *Zobel* v. *Zobel,* 151 Cal. 98, [90 Pac. 191].)

The basis of the right of rescission asserted by the plaintiff was the breach of warranties accompanying the sale. On January 12, 1912, the plaintiff gave to the defendant a written order reading as follows:

"Los Angeles, Cal., 1/12/12.

"Hackney Mfg. Co., Los Angeles, Calif.

"Dear Sirs: Please deliver to me one Hackney Auto Plow equipped with disc plows at as early date as possible, it being understood that I am to receive same out of the first shipment you receive from your factory after this date, and for

which I agree to pay the sum of $1650.00, F. O. B. St. Paul, Minn., subject to a cash discount of 5% as per agreement entered into with and by Mr. L. S. Hackney.

"Yours truly,

"E. E. REMSBERG."

At the same time he paid five hundred dollars on account. Pursuant to this order the defendant shipped the machine and delivered it to plaintiff at Palmdale, in Los Angeles County, on February 18, 1912, at which time the plaintiff paid the balance then due on the purchase price. This order, though signed by the plaintiff alone, was, when accepted and acted upon by the defendant, a written contract binding upon both parties. (9 Cyc. 300; *Luckhart* v. *Ogden,* 30 Cal. 547; *Bloom* v. *Hazzard,* 104 Cal. 310, [57 Pac. 1037]; *Gallagher* v. *Equitable Gas Light Co.,* 141 Cal. 699, [75 Pac. 329].) The plaintiff's complaint declared upon a number of oral representations and warranties. The defendant in his answer set up the writing. The court found that the written contract had been made after the alleged oral representations. At the trial the defendant objected to the introduction of any evidence to show the making of any oral representations precedent to the final consummation of the written agreement. This objection, based upon the ground that all prior oral negotiations were merged in the written contract, was sustained. The ruling was correct, the contract being complete upon its face, and there being no claim that the prior representations had been fraudulently made to induce the execution of the written agreement. (*Harrison* v. *McCormick,* 89 Cal. 327, [23 Am. St. Rep. 469, 26 Pac. 830]; *Gardiner* v. *McDonogh,* 147 Cal. 313, [81 Pac. 964].) But, notwithstanding its exclusion of this evidence, the court found that the defendant had made a number of representations and warranties touching the fitness of the Hackney Auto Plow for the purposes for which it was designed, the degree of skill and knowledge required to operate it, the simplicity and strength of its devices, its power, and its ability to do work. These findings cannot afford any support to the judgment. They must be disregarded, either on the ground that they are unsupported by evidence, or that, as matter of law, they cannot affect the written contract entered into after the making of all of these alleged representations and warranties. It is unimportant, if it were the fact, that the making of some

of these representations was admitted in the original answer. By the amended answer the defendant plainly asserts its purpose of standing upon the written contract, to the exclusion of any prior representations.

The rights of the parties must therefore be measured by the terms of their written agreement. The only warranties implied in a contract of sale of personal property are those declared in article III of chapter II of title I of part IV of the Civil Code. "Except as prescribed by this article, a mere contract of sale or agreement to sell does not imply a warranty." (Civ. Code, sec. 1764; *Sutro* v. *Rhodes*, 92 Cal. 117, 123, [28 Pac. 98]; *Browning* v. *McNear*, 145 Cal. 272, 280, [78 Pac. 722].) The article defines a number of warranties, but the only ones that can have any application to the present case are those declared by sections 1769, 1770, and 1771. These sections read as follows:

Sec. 1769. "One who sells or agrees to sell an article of his own manufacture thereby warrants it to be free from any latent defect, not disclosed to the buyer, arising from the process of manufacture, and also that neither he nor his agent in such manufacture has knowingly used improper materials therein."

Sec. 1770. "One who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose."

Sec. 1771. "One who sells or agrees to sell merchandise inaccessible to the examination of the buyer, thereby warrants that it is sound and merchantable."

At the trial the plaintiff seemed to place his reliance, in part at least, upon section 1770. His rejection of the machine was based upon its failure to do the work for which plaintiff desired to use it. But the contract was not such as to bring the case within the purview of section 1770. The article was not manufactured for the plaintiff under an order for a particular purpose. It was not manufactured under order at all. The defendant was in the business of manufacturing and selling an article known as the Hackney Auto Plow, and the plaintiff bought one of these articles by description. The warranties defined in section 1769, i. e., that the implement was free from any latent and undisclosed defect arising from the process of manufacture, and that the manufacturer had not knowingly used improper materials

therein, were implied in the contract, but there is neither allegation nor finding that these warranties were broken, and the evidence would not support such a finding. The finding that the machine was "defective both in material and workmanship" does not meet the requirements of section 1769. Furthermore, the evidence does not sustain the finding.

An examination of the decisions in other jurisdictions will show that the code sections are in substantial accord with the generally accepted rules of the common law. The prevailing doctrine applicable to cases like the present is laid down in the following passage, found in 1 Parsons on Contracts, page *586, quoted with approval by this court in *Bancroft* v. *San Francisco Tool Co.,* 120 Cal. 228, 232, [52 Pac. 496, 498] : "If a thing be ordered of a manufacturer for a special purpose, and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. This principle has been carried very far. It must, however, be limited to cases where a thing is ordered for a special purpose, and not applied to those where a special thing is ordered, although this be intended for a special purpose. For if the thing is itself specifically selected and ordered, there the purchaser takes upon himself the risk of its effecting its purpose." This doctrine is supported by a wealth of authority. In *Fuchs & Lang Mfg. Co.* v. *Kittredge & Co.,* 242 Ill. 88, [89 N. E. 923], the court said: "In a contract for the sale of an article under its patent or other trade name there is an undertaking that the article delivered shall be of the kind ordered but not that it shall be fit for any particular purpose. If the buyer gets what he bargains for, there is no implied warranty though it does not answer his purpose." In *Cosgrove* v. *Bennett,* 32 Minn. 371, [20 N. W. 359], the court laid down the rule in these words: "Where . . . the article ordered was to be of a particular design or pattern, well defined and understood between the parties, and the article made and delivered in pursuance of the contract conforms to the pattern or model, there is no warranty implied further than that it should be of good workmanship and material." We cite a few of the many decisions which declare the principle in similar terms. (*Thompson* v. *Gunderson,* 106 Wis. 449, [49 L. R. A. 859, 82 N. W. 299] ; *Manufacturing Co.* v. *Cuming,* 35 App. Div. 376, [54 N. Y. Supp. 818] ; *Gachet* v. *Warren,* 72 Ala. 288; *Mason* v. *Chappell,* 15 Gratt.

(Va.) 572; *Lombard etc. Co.* v. *Great Northern Paper Co.,* 101 Me. 114, [6 L. R. A. (N. S.) 180, 63 Atl. 555]; *Scott* v. *Vulcan Iron Wks. Co.,* 31 Okl. 334, [122 Pac. 186]; *La Crosse Plow Co.* v. *Brooks,* 142 Wis. 640, [126 N. W. 3]; *Ehrsam* v. *Brown,* 76 Kan. 206, [15 L. R. A. (N. S.) 877, 91 Pac. 179].)

Though somewhat sweeping language was used in some of these cases, the question under consideration was whether the sale implied a warranty that the article was suitable for the special purposes of the buyer. The holding that there was no such warranty is not to be understood to exclude a warranty of general suitability or usefulness. This modification has been expressed in a number of well-considered cases. While recognizing that the sale, by the manufacturer, of an article of a specified kind by name or description does not carry with it an implied warranty of fitness for the *particular* purpose to which the purchaser designed to put it, these decisions declare, in effect, that there is an implied warranty of fitness for the *general* purpose for which articles of the kind are designed to be used. In *Seitz* v. *Brewers' Refrigerator Co.,* 141 U. S. 510, [35 L. Ed. 837, 12 Sup. Ct. Rep. 46], the court used this language: "In the case at bar the machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up and put in operation in the brewery. The only *implication in regard* to it was that it would perform the work the described machine was made to do. . . . " Similarly, in *Davis Calyx Drill Co.* v. *Mallory,* 137 Fed. 332, [69 L. R. A. 973, 69 C. C. A. 662], the opinion of the court contains this language: "The extent of the implied warranty in such a case is that the machine, tool, or article shall correspond with the description or exemplar, and that it shall be suitable to perform the ordinary work which the described machine is made to do." (See, also, *Hawley Furnace Co.* v. *Van Winkle Gin Works,* 4 Ga. App. 85, [60 S. E. 1008].)

Mr. Williston, in his work on Sales, suggests, and we think rightly, that the implied warranty of fitness for the general purposes for which the article is made and sold is a phase of the warranty of merchantability. "The principle already laid down that a manufacturer impliedly warrants his goods to be merchantable includes, therefore, the doctrine sometimes stated in this way—that the manufacturer of goods impliedly warrants that they are reasonably fit for the general

purpose for which they are manufactured. (Sec. 235.) As we have already pointed out, section 1771 of our Civil Code declares that a warranty of soundness and merchantability attaches to a sale of goods "inaccessible to the examination of the buyer." It may well be that an allegation that the article here in question was not merchantable would have been supported by evidence that the machine was useless for the general purposes—principally plowing—for which it was designed and sold. But it is not alleged or found in terms that the Hackney Auto Plow purchased by plaintiff was not merchantable, and the findings made do not necessarily import want of merchantability. It is not found that the machine would not plow under ordinary conditions of soil, or that it was not capable of plowing at all. The findings are that it did not do the work in accordance with the antecedent representations set up in the complaint, and that, when tested upon specific pieces of land, it failed to operate successfully or to plow said land, "except a few irregular furrows of uneven depth or to do any plowing except only to scratch merely the surface of the soil." This is not a finding of such "general" unfitness as to amount to a want of merchantability. While there is a finding that the auto plow was not "reasonably fit for the purposes for which it was designed and built," there was no issue to which this finding is responsive, the allegation of the complaint being that the machine was not reasonably fit "for the purposes for which it was ordered." Furthermore, we fail to find in the evidence any support for the finding which was made. In fact, the case was not tried on the theory that there had been a breach of warranty that the machine was merchantable. Plaintiff relied on the failure of the auto plow to comply with the specific representations made by the seller, and upon its want of fitness for the particular purposes to which the plaintiff intended to put the implement. This is shown not only by the complaint, but by the statements of the plaintiff himself in the letter relied upon as a notice of rescission.

The judgment is reversed.

Shaw, J., and Lawlor, J., concurred.