[Civ. No. 2785.  Second Appellate District, Division One.—June 10, 1920.]

## WILL P. STEVENS, Appellant, v. E. A. PARKFORD et al., Respondents.

[1] CONTRACTS—INSTALLATION OF REFRIGERATING PLANT ACCORDING TO SPECIFICATIONS—IMPLIED WARRANTY.—Where a contract for a refrigeration plant contains full and complete specifications therefor, there is no implied warranty that the machine will answer the particular purpose for which the buyers intend to use it.

----

1. Implied warranty by manufacturer or vendor of machinery or apparatus, not in itself defective, of fitness for use under existing conditions, note, 6 L. R. A. (N. S.) 180.

[2] ID.—REFRIGERATION GUARANTEED TO BE PRODUCED—INSUFFICIENCY OF EVIDENCE TO SHOW BREACH.—In an action to recover the agreed contract price for installing a refrigerating plant which was guaranteed by plaintiff to produce refrigeration equal to the melting of one ton of ice daily, if operated eight hours per day with the doors closed except when in actual use, evidence that the apparatus would not produce refrigeration sufficient to preserve commodities placed in the cooling-boxes is insufficient to justify a finding that the plant did not produce refrigeration in accordance with plaintiff's guaranty.

[3] ID.—INSTALLATION OF PLANT AND BOXES UNDER SEPARATE CONTRACTS — PAYMENT FOR ONE NOT CONTINGENT ON OPERATION OF OTHER.—Where two contracts, one for the installation of a refrigerating plant and the other for the installation of cold-storage boxes, are entirely distinct and separate and in the latter contract no mention is made of the former, in an action thereon, it is error for the court to find that payment for the installation of the cold-storage boxes was dependent upon the successful operation of the refrigerating plant.

APPEAL from a judgment of the Superior Court of San Bernardino County. H. T. Dewhirst, Judge. Reversed.

The facts are stated in the opinion of the court.

Andrew M. Strong for Appellant.

Warner & Jones for Respondents.

SHAW, J.—Plaintiff, insisting that the findings are not supported by the evidence, appeals from a judgment entered in favor of defendants.

The complaint sets forth three causes of action. By the first count it is alleged that in December, 1914, plaintiff sold, delivered, and installed in defendants' hotel, known as the Casa Blanca Hotel, certain described cooling-boxes for which defendants agreed to pay him the sum of $537.50, all of which is unpaid. The second count declares upon a written contract, dated October 21, 1914, under and pursuant to which it is alleged that plaintiff furnished and installed in said hotel a one-ton refrigerating plant and appurtenances to be used in connection therewith, for which defendants agreed to pay the sum of $763, no part of which has been paid. The third count is for $17.50, alleged to be due for a

pump and oil sold defendants, as to which, since judgment therefor was rendered in favor of plaintiff, there appears to be no controversy.

While the court found that plaintiff furnished and properly installed the cooling-boxes for which defendants agreed to pay him the sum of $537.50, it further found that payment therefor so to be made by defendants was conditional and dependent upon the refrigerating system operating according to warranties set forth in the contract dated October 21st for the installation of the same; in other words, payment for the cooling-boxes was made to depend upon the successful operation of the refrigerating plant, which, as found, "did not operate according to the provisions and warranties set forth in said contract," and did not produce refrigeration in accordance with the guaranty contained in the contract dated October 21, 1914, under which the refrigerating plant was installed.

[1] The contract for the refrigerating plant contained full and complete specifications therefor, and not a scintilla of evidence, in so far as we are advised, was offered tending to show that, as installed, it was not constructed in strict accordance with the specifications therefor. In other words, as to the refrigerating plant, defendants got precisely what they contracted for, and there was no implied warranty that the machine would answer the particular purpose for which the buyers intended to use it. (*Seitz* v. *Brewers' Refrigerating Mach. Co.*, 141 U. S. 510, [35 L. Ed. 837, 12 Sup. Ct. Rep. 46, see, also, Rose's U. S. Notes]; *Fuchs & Lang Mfg. Co.* v. *Kittredge & Co.*, 242 Ill. 88, [89 N. E. 723]; *Bancroft* v. *San Francisco Tool Co.*, 120 Cal. 228, [52 Pac. 496].) [2] Hence, to sustain the finding complained of, we must look to the express warranties, if any, contained in the contract. Other than as to furnishing and installing the machinery in a workmanlike manner as provided in the specifications and as to which no complaint is made, the only obligation assumed by plaintiff is the following: "I guarantee that the above-described machine and apparatus will produce refrigeration equal to the melting of . . . tons of ice daily (with continuous operation)." Since the contract provides for a "one-ton refrigeration machine," the guaranty should be read as providing for refrigeration equal to the melting of one ton of ice daily; and the pro-

vision "with continuous operation" is modified by another provision in the contract that "length of operation to be not over eight hours per day provided all doors are kept closed except when in actual service." So the guaranty was that the apparatus, operated eight hours per day with the doors closed except when in actual use, would produce refrigeration equal to the melting of one ton of ice per day. The record is entirely silent as to the performance of the machinery under the conditions so expressed. The entire evidence offered by defendants was to the effect that the apparatus did not work satisfactorily in that meats, poultry, milk, and cream on occasions deteriorated and became unfit for use. But plaintiff's guaranty was not that the apparatus would produce refrigeration sufficient to preserve commodities placed in the cooling-boxes, but solely that it would, subject to the conditions stated, produce refrigeration equal to the melting of one ton of ice daily, and as to which no evidence whatsoever was introduced. For aught that appears to the contrary, such degree of refrigeration might have been produced, and, notwithstanding such fact, the commodities placed in the cold-storage receptacles deteriorated. Since no question is raised as to the construction of the plant in accordance with the specifications and the only guaranty was as to the degree of refrigeration to be produced, that was the only question which the court was called upon to try. The fact that it did not perform the service satisfactorily to defendants, or that meats, fruits, and milk deteriorated, is wholly immaterial, provided the apparatus produced the degree of refrigeration guaranteed by plaintiff. The evidence is insufficient to justify the finding that the plant did not produce refrigeration in accordance with the plaintiff's guaranty.

[3] The court also erred in finding that the cold-storage boxes installed by plaintiff under his contract were covered by the contract for the installation of the refrigerating plant. The two contracts were entirely distinct and separate. That for the cold-storage boxes, constructed in accordance with specifications, was made months after the contract for the refrigerating plant, and the position of plaintiff in reference thereto is precisely that of a third party who had put in the cooling-boxes. While it is true that the contract of October 21, 1914, under which the

refrigerating plant was installed, required defendants to provide the storage chambers and insulate and construct them in accordance with plaintiff's plans and instructions therefor, the construction thereof by plaintiff under a contract wherein no reference was made to the prior contract for other work did not render payment dependent upon whether or not the refrigerating plant should operate successfully. If done by a third party, he would have been entitled to payment, regardless of whether the refrigerating plant produced refrigeration equal to the melting of one ton of ice per day or not. And so plaintiff, having properly installed the cold-storage receptacles in accordance with the specifications, is entitled to payment without regard to whether or not he failed to comply with the contract under which he installed the refrigerating plant.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.