WIENER vs. WHIPPLE.

*October 20 — November 3, 1881.*

SALE OF CHATTELS: *(1, 2) When entry in memorandum book binds as written contract. (3) Parol addition to written contract.*

1. An entry by a vendor, in his memorandum book and with his signature, of the facts and terms of a sale, does not bind him as a written contract, unless signed by or for the vendee.
2. Where the vendee's agent, known by the vendor to be acting as such, also signs such memorandum, though in his own name, both parties are bound by it as a written contract.
3. A written contract of sale which does not show that it was made *by sample*, cannot be explained or modified by proof that it was so made.

APPEAL from the County Court of *Dodge* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to recover for a breach of contract for the purchase of 300 bushels of barley, which plaintiff alleges he bought of the defendant, and which the defendant refused to deliver according to the terms of the contract. The evidence shows that, at the time of the alleged sale, the defendant, who was a farmer, had in his possession, on his farm, about 300 bushels of barley which he desired to sell, and that this fact was made known to the plaintiff; and that the father of the defendant, acting as his agent, saw the plaintiff at his place of business, some distance from the place where the barley was, and made a sale of the same to the plaintiff. Upon such sale plaintiff paid the defendant's agent the sum of $25

upon the contract, which was received by the defendant from his agent. Upon making the sale the following writing was made and signed by the plaintiff, and by the father as agent of the defendant:.

"'Bought of *Cass Whipple* about 300 bushels of barley, at 65 cents for 50 pounds, to be delivered by the 15th of September next. Paid on same $25. A. WHIPPLE,

"'WATERLOO, August 24, 1880. S. M. WIENER.'

"Upon the trial it was shown that the defendant, *C. H. Whipple*, delivered one load of barley to the plaintiff, which was accepted and paid for, and that he afterwards offered to deliver two loads more, which the plaintiff refused to accept, alleging that it was not of the quality which he bought; the plaintiff claiming that he bought the barley by sample, and that the barley tendered by the defendant was not as good a quality as the sample.

"The learned counsel for the defendant alleges as error, that the county court permitted the plaintiff on the trial to give parol evidence tending to show that the sale of the barley was by sample. The defendant objected to this evidence, and also to evidence offered tending to show that the barley tendered and rejected was not of as good a quality as the sample. The evidence was admitted against his objection. The learned county judge instructed the jury that if they found from the evidence that it was a sale by sample, and the barley tendered by defendant was of a quality inferior to the sample, then the plaintiff was entitled to recover; but if they found it was not a sale by sample, then the defendant was entitled to their verdict."

There was a verdict and judgment for the plaintiff; and defendant appealed from the judgment.

For the appellant there was a brief by *Smith, Rogers & Frank*, and oral argument by *Mr. Frank*.

*Harlow Pease*, for the respondent, contended that the memorandum was not made for the purpose of charging the defend-

ant. It was made for the convenience of *Wiener*, and signed by A. Whipple as evidence that the $25 had been paid to him. *Bacon v. Eccles*, 43 Wis., 227. If it be conceded that the writing was a contract, it was perfectly competent to show by parol whether the purchase was made by sample or otherwise. *Hubbard v. Marshall*, 50 Wis., 326. The proof shows that the contract was a parol contract, made valid by the payment of $25 as part of the purchase money.

TAYLOR, J. The case presents this question: Was it competent for the plaintiff, after having made and signed the writing above set forth, to show by parol that the purchase was a purchase by sample? The respondent testified that after he made the purchase of the agent of the appellant, he paid the $25, and then took out his memorandum book, and wrote the above-quoted memorandum therein, which was signed by himself and the agent of the appellant. The respondent kept the memorandum in his possession. On the part of the learned counsel for the appellant it is urged, that this writing is in itself a perfect contract, which shows on its face that the respondent purchased of the appellant 300 bushels of barley at a price named, to be delivered within a specified time; and that, the same being signed by the agent of the appellant, although in the name of the agent, it bound the appellant to deliver the barley according to its terms. We are inclined to think the question of the admissibility of the parol evidence showing the terms of the sale depends upon the question whether the appellant was bound by the terms of the writing. If the appellant were not bound by its terms, then the respondent would not be. If the respondent, after making the contract of purchase, had made an entry of the terms of the sale in his memorandum book for the mere purpose of aiding his memory in regard to the matter, and for his own convenience, without requiring the agent of the appellant to sign the same, such memorandum would not constitute the

contract between the parties, and would bind neither. It would have no greater effect as proof of the contract in fact made by the parties than any other entry made by a party, to which he might refer for the purpose of refreshing his memory as to the terms of the transaction. The appellant would not be bound by such an entry, because made without his being called upon to consent to its terms; and the respondent would not be bound, because it would be held to be a mere memorandum of the transaction in aid of his memory, and not intended as binding him to its exact terms. The appellant would be at liberty to insist that the parol contract was the only contract he had made. The writing made, without his assent thereto, by the other party, could in no way bind him, and consequently would not bind the other contracting party. If in such case the appellant insisted that the parol contract was in fact the same as the writing made by the respondent in his memorandum book, such memorandum could be used as an admission of the respondent to support his version of the contract, and to that extent only would it be evidence for him.

The effect of a memorandum of sale, made without the assent or authority of all the parties to the contract, is illustrated by the decisions of the courts upon the sufficiency of such unauthorized memorandum to satisfy the statute of frauds. It has been often held that the party not assenting to the making of such memorandum is not bound thereby, and may prove the terms of the parol contract for the very purpose of showing that the memorandum does not state the real contract between the parties, and so defeat a recovery upon it under the statute of frauds for want of a sufficient note or memorandum thereof in writing. See Benjamin on Sales (3d Am. ed.), §§ 209, 212, and notes. It is evident that the principle of these cases can have no application to a case where it is shown that both parties have assented to and signed the writing. It is well settled by the authorities that where a writing contains in itself all the elements of a valid agreement to sell on the

one part and buy on the other, so far as the writing sets out, either in express terms or by legal intent, the conditions of the contract, it cannot be varied by parol evidence.

It is said on the part of the learned counsel for the respondent, that this writing does not bind the appellant, because his agent signed his own name and not the name of his principal, and so it should not and does not bind the respondent. It is also said that the appellant's agent signed the memorandum as a mere acknowledgment of the receipt of the $25, and not as assenting in any way to its terms as an agreement to sell. The cases are very clear that when a person acts for a principal, and such fact is known to the party dealing with him, his contract, though executed in his own name, binds his principal equally as though signed in the name of such principal, and that parol evidence is admissible to show the fact of his agency in order to charge the principal, notwithstanding the writing is executed by the agent in his own name. Benjamin on Sales, § 236; *Trueman v. Loder*, 11 Ad. & E., 587–594; *Stowell v. Eldred*, 39 Wis., 615; *Taintor v. Prendergast*, 3 Hill, 72; *Higgins v. Senior*, 8 M. & W., 840; *Huntington v. Knox*, 7 Cush., 371; Story on Agency, § 410. Many other cases might be cited to the same point. These cases go so far as to hold that such signature of the agent is good under the statute of frauds. The signature of the agent in such case is deemed the signature of the principal, and is a sufficient signing to take the case out of the statute.

In an action upon this writing by the respondent against the appellant, it seems to us clear that the appellant would be bound by its terms. Had the price of barley advanced, he would be bound to deliver according to its terms for the price fixed therein. In our opinion the writing signed by the vendor admits that the vendee, whose name is also signed thereto, bought of him 300 bushels of barley at 65 cents per 50 lbs., to be delivered as therein stated, and that the vendee had paid him $25 on the contract price. All these matters are made

clear by the writing itself in express terms. It is equally clear that, from the terms of the writing, the law implies that payment was to be made on delivery, and probably that the barley should be merchantable; but for the purposes of this case it is unnecessary to determine whether the merchantable quality of the barley to be delivered is a legal implication from the terms of the contract or not. It is enough for the determination of this case to know that there is neither an express statement in the writing, nor a legal implication from what is stated, that the barley was sold by sample, or that it should be of the quality of a sample furnished to the buyer at the time of the contract. This court has repeatedly held that where there is a written instrument binding upon both of the parties thereto, which in itself is a complete contract capable of being understood and enforced, parol evidence cannot be resorted to to change its express provisions or their legal effect. In *Charles v. Denis*, 42 Wis., 56, it was held that one who indorses a note in blank, without any qualification to such indorsement in writing, cannot show by parol any matter which varies or contradicts the legal liability which the law attaches to such indorsement. In that case the indorser offered to show that when he indorsed the note it was understood and agreed between the parties that he should not be liable upon such indorsement, and that it was simply made to transfer the title to the note.

The written contract being plain and unequivocal, no parol evidence can be given to explain or change its terms. *Peet v. Railroad Co.*, 19 Wis., 118; *Same v. Same*, 20 Wis., 594. These cases involved the construction of a contract in the shape of a receipt given by the railroad company for freight agreed to be transported by it. It was held that by the terms of the receipt the railroad company agreed to transport to and deliver in New York, and it could not show by parol that it was agreed that it should deliver the goods at the terminus of its road in Chicago to another carrier, to be transported from

there to New York by such other carrier.  The case of *Meyer v. Everth*, 4 Campb., 22, was in all respects like the case at bar.  The plaintiff had bought "50 hogsheads of Hambro sugar loaves at 155s., free on board a British ship; acceptance, 90 days."  The writing in the case was what is called a bought note, signed by the defendant, and the description of the sugar bought, with price, etc., was as above quoted.  In his complaint the plaintiff alleged that he purchased the sugar by sample; and alleged, as a breach of the contract, that the sugar delivered was not as good as the sample.  Lord ELLEN-BOROUGH nonsuited the plaintiff on the trial, giving the following reasons: "It was no part of the contract that the sugar should be equal to the sample.  Where goods are sold in this way, I think evidence might be admissible to show that at the time of the sale a sample was fraudulently exhibited to deceive the buyers, whereby the plaintiff had been induced to purchase the commodity, which turned out of greatly inferior quality and value.  But, when the sale note is silent as to the sample, I cannot permit it to be incorporated into the contract.  This would be contrary to *Meres v. Ansell*, 3 Wilson, 275, and would amount to an admission of parol evidence to contradict a written document."  *Gardiner v. Gray*, 4 Campb., 144, was in all respects like *Meyer v. Everth*, and a like decision was made by the same learned judge.  Although these are *nisi prius* cases, they are considered good law in England, and are quoted as authority in Benjamin on Sales (3d ed.), § 650.  These decisions are sustained upon the well-settled rule that parol evidence cannot be received to contradict, vary or add to a written contract, perfect in itself.

This court has adhered strictly to the rule that a written contract cannot be varied or changed by parol proof.  See *Whiting v. Gould*, 2 Wis., 552; *Lowber v. Connit*, 36 Wis., 176; *Hubbard v. Marshall*, 50 Wis., 322; *Schultz v. Coon*, 51 Wis., 416.  In the last case cited, the written contract of sale was hardly as definite as the one proved in the case at

Collins vs. The Singer Manuf'g Co.

bar, yet this court held that it was evidently a contract of sale, and parol evidence could not be given to vary or contradict its terms.

It appearing that the contract was in writing, and such written contract failing to show that the sale was by sample, it was clearly error to permit the plaintiff to show by parol that the sale was in fact made by sample. Upon the compe-tent evidence given upon the trial, the question whether the sale was by sample or otherwise, was immaterial, and should not have been submitted to the jury.

*By the Court.*— The judgment of the county court is re-versed, and the cause remanded for a new trial.